In the Matter of City Bank Farmers Trust Company, as Trustee, Appellant, against Mark Graves et al., Constituting the State Tax Commission, Respondents.

2

(Argued June 2, 1936; decided July 8, 1936.)

*Rollin Browne, C. Alexander Capron* and *Carter T. Louthan* for appellant.

*John J. Bennett, Jr., Attorney-General (Wendell P. Brown* of counsel), for respondents.

HUBBS, J. The Farmers' Loan and Trust Company, appellant's predecessor, entered into a trust agreement with " all present and future holders of certificates issued and to be issued " thereunder, by which it established an investment fund known as " The Farmers' Loan and Trust Company Investment Fund (Number 1)," to consist of " all sums which have been and which may hereafter be received by the trustee hereunder, which shall be held and managed by the trustee upon the terms and conditions " set forth in the agreement. The trustee reserved the right to receive subscriptions to the fund " in such amount or amounts and from such person or persons as the trustee in its discretion " might deem desirable and each subscriber specifically agreed and recognized " that such subscription shall be comingled, held, managed and invested with all other subscriptions as a single fund." The legal title to the fund was vested in the trustee and the registered owners of certificates were " deemed to be the owners of an equitable beneficial interest in the investment fund." The fund was divided into shares of $100, each subscriber receiving a certificate. Management of the fund was exclusively within the hands

of the trustee. The agreement named an auditor. The auditor was the representative of the certificate holders and provision was made for the naming by them of subsequent appointees.

The certificates were not transferable, except by assignment. An assignee could only require redemption of certificates held. In the case of death of a certificate holder his certificate could only be redeemed or assigned for redemption by his personal representatives. The certificate holders were made liable for taxes required to be paid on income derived from the investment fund, other than income taxes. For taxes paid " the trustee shall be entitled to reimbursement out of the investment fund."

While the agreement contained many details, the foregoing fairly states the plan of operation of the fund. Its purpose was " to obtain the greater security in the investment of their funds which will result if the funds of such clients so requiring investment are consolidated and invested as a single fund, thus giving to each investor greater diversity than would be practicable if such funds were invested separately."

During the years 1928 to 1932 the trustee handled securities which ranged in value from $4,126,966.97 in 1928 to $2,980,499.29 in 1931. It realized profits of $125,921.96 during 1928 and $437,593.20 during 1929. It suffered losses during the year 1930 of $176,707.58 and during 1931 of $567,242.08. The State Tax Commission assessed certain taxes against appellant.

The questions presented are, *first*, whether the instant trust is an entity which the Legislature intended to tax under article 9-A of the Tax Law (Cons. Laws, ch. 60), and, *second*, if so, whether the statute violates the due process or equal protection clauses of the State and Federal Constitutions.

Sections 208 and 209 of the Tax Law provide:

" § 208. Definitions. As used in this article:

" 1. The term ' corporation ' includes a joint-stock company or association and any business conducted by a trustee or trustees wherein interest or ownership is evidenced by certificate or other written instrument; * * *.

" § 209. Franchise tax on corporations based on net income. For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic corporation, and for the privilege of doing business in this state, every foreign corporation, except corporations specified in the next section, shall annually pay in advance * * * an annual franchise tax, to be computed by the tax commission upon the basis of its entire net income. * * * "

The appellant contends that the trust possesses none of the essential characteristics of a quasi-corporation and does not operate in an organized capacity. That it was in fact conducting a business is reasonably clear. With profits and losses from the sale of securities in the amounts as stated above and the numerous transactions from which those profits and losses resulted, it was doing more than merely investing and reinvesting the trust fund and collecting and distributing the income as in an ordinary trust. The purpose of the trust was to procure a greater income and security of investment by the commingling of the funds and their administration as a unit. The broad powers given to the trustee indicate that it was not the purpose of the investors to limit the management of the fund to the receipt and distribution of income, with only incidental power to change investments and reinvest funds resulting from sales of securities. The purpose of the investors that the trustee shall engage in the business of buying and selling securities is clear, not only from the trust agreement but from the manner in which the fund was handled. If instead of investing their funds in such a trust the investors had incorporated and conducted similar transactions, the corporation would clearly have been engaged in " business."

The question is, therefore, as to whether the business so conducted was conducted in a corporate or organized capacity. The appellant contends that because the certificate holders delegated to the trustee the entire management without reserving the right of substitution of such trustee or to control its action, and because the certificates were transferable only in a limited way, the relation between the subscribers falls short of constituting an association.

The statute says nothing about transferability of certificates. The wording is " interest or ownership is evidenced by certificate or other written instrument."

It is also clear from a consideration of the terms of the trust agreement that there was an " association " of the certificate holders. They were to be entitled to meet and select an auditor who was to represent them in the examination and auditing of the accounts of the trustee. Their relations to each other differed from the ordinary relation of stockholders to a corporation and its directors, but it cannot be said that the certificate holders were not operating to a degree in an organized capacity. It is quite clear that the certificate holders, through a trustee, were conducting a business in an organized capacity.

That such a conclusion is correct is substantiated in principle by recent decisions in this State and in the Federal courts dealing with taxes of various kinds imposed upon trusts having somewhat similar features.

In *People ex rel. Guaranty Trust Co.* v. *Lynch* (265 N. Y. 593) we considered a franchise tax assessed under article 9-A of the Tax Law against " United States Shares Corporation, Assignatory Corporation, Series A," an investment trust, created by an agreement which provided that the grantor would transfer certain designated units of stock to the trustee and that the trustee would hold the stocks upon the trust set forth in the agreement and upon receipt of each unit would deliver to the grantor 1,000 trust shares or certificates of beneficial interest. The trustee was to hold the securities constituting the

trust *res*, to collect the dividends paid thereon, and to make a semi-annual distribution thereof to the certificate holders. The stock held by the trustee could be sold under certain designated conditions and if sold the proceeds were to be reinvested in other stock or held by the trustee and credited to the proper unit. The questions presented were whether the trust involved was in fact doing business in this State and, therefore, subject to the franchise tax. We affirmed the final determination of the Tax Commission assessing franchise taxes. The trustee was in fact a corporation, but the tax was not assessed upon it as a corporation but upon the income of the trust.

The appellant says that there the trust possessed two important distinguishing characteristics of the corporate form of organization which are absent in the case at bar — that there the certificates of beneficial interest were transferable, giving to the organization a freely shifting personnel and a continuity of existence as a separate entity. In that case, as in the instant case, the tax was not upon a corporation but upon an investment fund in which the corporation had an interest and which it handled or caused to be handled in a quasi-corporate form. The difference, if difference of importance exists, is only in matter of degree.

In that case the certificates were assignable or transferable to a limited extent, that is, to other trusts represented in the fund, and there was a different period of existence of the trust, resulting from the assignability of certificates, not present in the case at bar. Since, however, the certificates were transferable to other trusts only, the life of the fund could be perpetual only if new trusts continued to be added, which is the situation here. The statute does not require that the certificates be transferable to constitute doing business, and there is no requirement that the existence of the organization shall be perpetual. The life of the organization in the case at bar was depend-

ent upon the will of the trustee. Despite the power existing in the trustee to terminate the trust, the fact remains that while it continued to conduct the business of the trust, the organization and association of the certificate holders continued, and during such period the fund continued to possess, to a limited degree, some of the features of corporate organizations. Its members were not a partnership. The fund and the trustee alone were responsible to creditors. That the franchise tax does not apply to an ordinary trust but is intended to reach a business of the nature of that conducted under the trust in the case at bar has been decided in the *Guaranty Trust Company* case and there is nothing in the facts of that case which affords a ground for the contention that the tax is not applicable in the circumstances here involved.

In *Brooklyn Trust Co.* v. *Commissioner of Internal Revenue* (80 Fed. Rep. [2d] 865, 868; certiorari denied April 13, 1936, 298 U. S. 659) the Circuit Court of Appeals had under consideration the applicability of the Federal income tax (Revenue Act, 1928; 45 U. S. Stat. 878) to " Composite Fund, Series A," established by the Brooklyn Trust Company for the purpose of handling a composite fund made up of trust funds of individual investors. The fund was divided into units of a face value of $100. The certificates were assignable to other trusts of the bank and were redeemable in cash at the option of the bank or holder. The bank had no interest in the composite fund and received no compensation for managing it, although it did receive commissions for acting as trustee under each personal trust. It made a large number of purchases and sales each year. The statute provided that the tax should be applicable to an association and Judge MANTON, speaking for a majority of the court, held the trust to be an association within the meaning of the act. He said: " To keep such a fund invested in securities to the best advantage was to engage in business in the fullest sense. * * * The fact that there is but one trustee does not

preclude the finding that an association exists between the investors and their trustees or among the investors alone. * * * Moreover, the composite fund is separable from the individual trust estates from which the money invested in the fund came."

While in that case the tax involved was the Federal income tax, the decision is authority to the effect that the trust here involved was doing business in an organized capacity. That the decision is in harmony with the attitude of the United States Supreme Court is evidenced by a series of cases involving the Federal Income Tax Law, recently decided with opinions by the Chief Justice.

In *Morrissey* v. *Commissioner of Internal Revenue* (296 U. S. 344, 357) the Chief Justice reviewed at length the history of the legislation leading up to the act in question and stated that the question was not one of the power of Congress to impose the tax upon the petitioners but was simply one of statutory construction. He said: " But the nature and purpose of the cooperative undertaking will differentiate it from an ordinary trust. In what are called ' business trusts ' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in * * * securities or other personal property; * * * where those who become beneficially interested * * * seek to share the advantages of a union of their interests in the common enterprise. * * * The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity. * * * it cannot be considered to be essential to the existence of an association that those beneficially interested should hold meetings or elect their representatives. Again, while the faculty of transferring the interests of members without affecting the continuity of the enterprise may be

deemed to be characteristic, the test of an association is not to be found in the mere formal evidence of interests or in a particular method of transfer."

In *Helvering* v. *Coleman-Gilbert Associates* (296 U. S. 369, 373), an income tax case, the court held that the trust constituted an association within the meaning of the Revenue Act; that a few persons as well as many may form an association to conduct a business for their common profit; that the absence of provision for control by the beneficiaries was not determinative; that the fact that the enterprise was confined to dealings in real property, its management and improvement, did not prevent its being classed as an association, and that the fact that there had been no meetings and no records, and the acts of the trustees were not determined by a majority vote, or that they had conducted the business in the same manner as before the trust was formed, did not change the character of the enterprise. The court said: " The significant resemblance to the action of directors does not lie in the formalities of meetings or records but in the fact that, by virtue of the agreement for the conduct of the business of a joint enterprise, the parties have secured the centralized management of their undertaking through designated representatives." (See, also, *Swanson* v. *Commissioner of Internal Revenue*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; *Hecht* v. *Malley*, 265 U. S. 144.)

We have reached the conclusion that the trust is a business enterprise of the kind contemplated by the act and has been properly taxed as such. It should be noted that our statute is much broader than the statutes under consideration in the Federal cases.

To the remaining question as to whether, if the statute be construed as imposing a tax upon the trustee, it is to that extent void and unconstitutional in that it attempts to deprive the trustee and the beneficiaries of their property without due process of law and denies to them the equal protection of the laws, in violation of the provisions

of the Fourteenth Amendment to the United States Constitution and section 6 of article I of the New York Constitution, the answer seems clear. No tax has been imposed upon the trustee. The tax imposed is upon the business conducted by the trustee. (*State Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527.)

In *People ex rel. Salisbury Axle Co.* v. *Lynch* (259 N. Y. 228, 240) the court said: " as was said in *New York* v. *Latrobe* (279 U. S. 421, 427): 'Although permissible, a franchise tax need not be based solely on the amount of business done or property owned within the State. It may be rested on the nature of the business * * * or the particular form in which it is carried on * * * so long as it bears some * * * relationship to the privilege granted or to the protection of the interests of the State.' "

The facts in this case do not distinguish it from the trust under consideration in *People ex rel. Guaranty Trust Co.* v. *Lynch* (*supra*). The situation in the two cases is practically identical. The differences are of degree rather than of character, and the purpose of the trust in each case was the same, to procure management of individual trust funds by having them commingled and handled as a single fund for the purpose of producing greater profit and income.

The order of the Appellate Division should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur

Order affirmed.